# Exhibit 3



# A-2025-02185

**Requester:** Walczak, Jonathan

**Status: In Progress**

## Appeal

### Appeal Information

| | | | |
|---|---|---|---|
| Received Date | 07/15/2025 | Agency | OIP |
| | | Document Delivery Method | Email |

### Request Information

| | |
|---|---|
| Request Number | NFP-1622050 |
| Component | FBI |
| Subject of Request | Original request text: |

"Im writing to request photos developed by the FBI from a disposable camera recovered by the FBI from the rubble of the World Trade Center after the Sept. 11, 2001, terrorist attacks.

In 2003, Donald Sachtleben, a supervisory special agent with the FBI's Explosives Unit, showed the photos to then-Baltimore Sun reporter Laura Sullivan, who reported their existence in a December article titled FBI team puts together pieces from scenes of terror bombings.

From the article:

"[FBI Explosives] Unit members found a disposable camera in the pocket of a man who jumped from one of the towers. When they developed the film months later, investigators found a chilling chronology of the mans experience that morning. The discovery of this camera by the FBI should be documented in evidence recovery logs of physical evidence recovered by the FBIs Operational Response Section as part of the FBIs PENTTBOM investigation. The FBI should therefore be able to narrow down a search for the photos today, in part by consulting evidence recovery logs.

There is no other camera like this. There are no other photos like these. They are singular, and they are, in this request, reasonably described and detailed enough to locate without an unduly burdensome search.

Its hard to think of a more egregious case of the FBI stonewalling a FOIA request by using the not reasonably described, not detailed enough, and unduly burdensome search exemptions.

This is a one-of-a-kind set of photos; physical evidence recovered by the FBI as part of the highest-profile investigation in American history. The photos were previously shown to a reporter. If the FBI truly cant locate them without an unduly burdensome search, that calls into question how the FBI stores and catalogs all evidence, even that collected as part of extremely high-profile cases.

Furthermore, there should be no national security concerns in releasing these photos, which document a historical event of high public interest from the point of a civilian; which presumably do not include any classified information; and which, once more, were already shown to a reporter by an FBI agent acting in an official capacity.

Finally, any privacy concerns can be addressed on a per-case basis, by, for example, limited redactions of faces of people in the photos not by rejecting this request wholesale on privacy grounds.

Please check all cross-references."

**Basis for Appeal**

Description of Appeal

To Whom It May Concern:

I'm writing to appeal the FBI's denial of my FOIA request no. NFP-1622050 (see attachments).

For 14 years, I've been trying to obtain a particular record from the FBI via appropriate FOIA channels. The FBI has consistently denied my requests with varying, inconsistent justifications. I have tried to address the FBI's concerns in good faith. I do not believe the FBI is responding in good faith. As I have exhausted all other options except litigation, I'm asking you to compel the FBI to release this record to me.

The record: After 9/11, the FBI recovered a disposable camera in the rubble of the World Trade Center. It developed images from the camera. I'm seeking the images.

Previously, the FBI denied my various requests pertaining to this record by:

-Stating that I did not reasonably describe the record. These photos are singular, and were taken from a one-of-a-kind vantage point of a major historical event (above the point of impact in one of the towers). They were developed as part of the highest-profile investigation in FBI history. They are reasonably described.

-Citing national security concerns. These photos show 9/11 from the perspective of a civilian and presumably do not include anything sensitive in terms national security. The FBI previously showed these images to then-Baltimore Sun reporter Laura Sullivan in 2003 (see attached).

-Citing privacy concerns. Privacy concerns can be addressed in a limited way, by, for example, redacting faces from the images, if necessary.

-And, most recently, by stating that the FBI can't search for the photos in its Central Records System. Note: I also asked the FBI to check cross-references, and, in its denial, it did not address that aspect of my request.

On June 26, 2025, before filing this FOIA request (NFP-1622050), I filed a different FOIA request (1672871-000) with the FBI seeking "all evidence recovery logs of physical evidence recovered by the Operational Response Section of the FBI Laboratory in New York City between 2001 and 2003 as part of the FBI's PENTTBOM investigation into the September 11, 2001, terrorist attacks."

The FBI issued a blanket denial of my request, saying federal law allows them to exempt from release "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to interfere with enforcement proceedings...."

Presumably, the FBI would be able to search these evidence logs and locate the disposable camera and the images I'm requested via FOIA request NFP-1622050.

Also, presumably, these evidence logs, which document at least some evidence already released publicly, could be released at least in part.

All of this to say that, in my opinion, the FBI continues to search for any justification not to release the record I seek and seems not to be acting in good faith.

And when I act in good faith, seeking other records that could help the FBI narrow down its search, it rejects those requests, too.

The idea that the FBI can't locate and release a series of one-of-a-kind photos taken by a civilian during a major historical event and already shown to a reporter is difficult to believe.

Again, I request your help, and I ask you to compel the FBI to release this record to me.

Sincerely,

Jonathan Walczak

| | |
|---|---|
| Based on Denial of Fee Waiver | No |
| Based on Denial of Expedited Processing | No |
| Requester Item Type 1 | Supplemental Information |
| Requester Items 1 | 📎 2025-07-09 - 1.pdf |
| Requester Item Type 2 | Supplemental Information |
| Requester Items 2 | 📎 2025-07-15.pdf |
| Requester Item Type 3 | Supplemental Information |
| Requester Items 3 | 📎 FBI team puts together pieces from scenes of terror bombings - Baltimore Sun.pdf |

## Requester Contact Information

| | | | |
|---|---|---|---|
| Salutation | Mr. | Address Type | Other |
| First Name | Jonathan | Country | United States |
| Middle Name | | Address Line 1 | |
| Last Name | Walczak | Address Line 2 | |
| Email Address | jonwalczak@protonmail.com | City | |
| Organization | | State | |
| Register Number | | Zip/Postal Code | |
| Phone Number | | | |
| Fax Number | | | |
| Other Information | Journalist | | |

## Expedited Processing Information

| | | | |
|---|---|---|---|
| Expedited Processing Requested? | Yes | Expedited Justification | The FBI has denied my FOIA requests seeking this record for 14 years, inconsistently citing different exemptions, most of which aren't credible even on the surface. It seems to me, then, that the FBI is stonewalling the request and denying it in bad faith.<br><br>The other option is that the FBI actually can't find these photos without an "unduly burdensome search," which calls into question how the FBI catalogs and stores evidence in even the highest-profile cases.<br><br>Either way, I am a full-time journalist ("a person who is primarily engaged in disseminating information") and there is "an urgency to inform the public about an actual or alleged Federal Government activity" (especially in advance of the 25th anniversary of the attacks next year. |
| Expedited Processing Request Date | | | |
| Expedited Processing Determination | Improper | | |
| Standards for Expedition | • 2. An urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information.<br>• 4. A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence. | | |

# eFOIA Request Received

From: efoia@subscriptions.fbi.gov <efoia@subscriptions.fbi.gov>
To: jonwalczak@protonmail.com
Date: Wednesday, July 9th, 2025 at 9:26 AM

## Individual Information

**Prefix**:

**First Name**: Jonathan

**Middle Name**:

**Last Name**: Walczak

**Suffix**:

**Email**: jonwalczak@protonmail.com

**Phone**:

**Location**: United States

## Domestic Address

**Address Line 1**:

**Address Line 2**:

**City**:

**State**:

**Postal**:

# Agreement to Pay

**How you will pay**

I am requesting a fee waiver for my request and have reviewed the FOIA reference guide. If my fee waiver is denied, I am willing to pay additional fees and will enter that maximum amount in the box below.

**Allow up to $** 200

# Proof Of Affiliation for Fee Waiver

**Waiver Explanation**

I'm a full-time investigative journalist.

**Documentation Files**

# Non-Individual FOIA Request

## Request Information

Im writing to request photos developed by the FBI from a disposable camera recovered by the FBI from the rubble of the World Trade Center after the Sept. 11, 2001, terrorist attacks.

In 2003, Donald Sachtleben, a supervisory special agent with the FBIs Explosives Unit, showed the photos to then-Baltimore Sun reporter Laura Sullivan, who reported their existence in a December article titled FBI team puts together pieces from scenes of terror bombings.

From the article:

[FBI Explosives] Unit members found a disposable camera in the pocket of a man who jumped from one of the towers. When they developed the film months later, investigators found a chilling chronology of the mans experience that morning.

The discovery of this camera by the FBI should be documented in evidence recovery logs of physical evidence recovered by the FBIs Operational Response Section as part of the FBIs PENTTBOM investigation. The FBI should therefore be able to narrow down a search for the photos today, in part by consulting evidence recovery logs.

There is no other camera like this. There are no other photos like these. They are singular, and they are, in this request, reasonably described and detailed enough to locate without an unduly burdensome search.

Its hard to think of a more egregious case of the FBI stonewalling a FOIA request by using the not reasonably described, not detailed enough, and unduly burdensome search exemptions.

This is a one-of-a-kind set of photos; physical evidence recovered by the FBI as part of the highest-profile investigation in American history. The photos were previously shown to a reporter. If the FBI truly cant locate them without an unduly burdensome search, that calls into question how the FBI stores and catalogs all evidence, even that collected as part of extremely high-profile cases.

Furthermore, there should be no national security concerns in releasing these photos, which document a historical event of high public interest from the point of a civilian; which presumably do not include any classified information; and which, once more, were already shown to a reporter by an FBI agent acting in an official capacity.

Finally, any privacy concerns can be addressed on a per-case basis, by, for example, limited redactions of faces of people in the photos  not by rejecting this request wholesale on privacy grounds.

Please check all cross-references.

# Expedite

**Expedite Reason**

The DOJ's FOIA policy states: "...if there is an urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information, his or her request will be expedited."

I'm a full-time investigative journalist ("a person who is primarily engaged in disseminating information."

There is an urgency here to inform the public about alleged federal government malfeasance: both how the FBI stores and catalogs physical evidence (especially, in this case, in advance of the 25th anniversary of the 9/11 attacks), and how it handles FOIA requests and denies even requests for detailed records using "not detailed enough" and "unduly burdensome" exemptions.

**

Please be advised that efoia@subscriptions.fbi.gov is a no-reply email address. Questions regarding your FOIA request may be directed to foipaquestions@fbi.gov. If you have received a FOIPA request number, please include this in all correspondence concerning your request. Please note eFOIPA requests are processed in the order that they are received. If you have not received a FOIPA request number, your request is in the process of being opened at which time it will be assigned a FOIPA request number and correspondence will be forthcoming.

**

Upon receipt of your FOIPA request number, you may check the status of your FOIPA request on the FBIs electronic FOIA Library (The Vault) on the FBIs public website, http://vault.fbi.gov by clicking on the Check Status of Your FOI/PA Request tool link. Status updates are performed on a weekly basis. If you receive a comment that your FOIPA request number was not located in the database, please check back at a later date.



U.S. Department of Justice

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

July 14, 2025

JONATHAN WALCZAK

Request No.: NFP-1622050
Subject: Photos From a Disposable Camera
(On or After September 11, 2001)

Dear Jonathan Walczak:

This is in response to your Freedom of Information/Privacy Acts (FOIPA) request. Please see the paragraphs below for relevant information about your request.

Your request for the above referenced subject is not searchable in our indices. The FBI Central Records System (CRS) is indexed according to investigatory interests, and it is not arranged in a manner that allows for the retrieval of information in the form you have requested. The FOIA does not require federal agencies to answer inquiries, create records, conduct research, or draw conclusions concerning queried data. Rather the FOIA requires agencies to provide access to reasonably described, nonexempt records. Therefore, your request is being administratively closed.

For questions on how to reasonably describe your request, please email us at foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request. Additional information about the FOIPA can be found at www.fbi.gov/foia.

If you are not satisfied with the FBI's determination in response to this request, you may proceed under any or all of the following options:

- You may seek dispute resolution services through the FBI directly by emailing our FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

- You may contact the Office of Government Information Services (OGIS), who serves as the federal FOIA Ombudsman. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

- You may file an administrative appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. **Pursuant to 28 C.F.R. § 16.8(a), your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.** If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please reference the FOIPA Request Number listed above in your correspondence so it may be easily identified. If possible, please provide a copy of your original request and this response letter with your appeal.

Note: Utilizing the FBI's dispute resolution services or requesting mediation through OGIS does not toll the ninety (90) day limit to file a timely appeal with OIP.

Sincerely,

Record/Information Dissemination Section
Information Management Division

# FBI team puts together pieces from scenes of terror bombings

By **Laura Sullivan**
THE BALTIMORE SUN

DECEMBER 21, 2003 | QUANTICO, VA.

QUANTICO, VA. - At the center of a chilly, cavernous garage known as Evidence Bay 1284, Mohammed Atta's suitcase sits atop a table. It's a high-end Travelpro, barely used. On its handle the flight tag reads: American Airlines (Flight) #11. Los Angeles. Sept. 11, 2001.

The suitcase waits here among hundreds of other remnants of the 2001 terrorist attacks at the FBI's national laboratory for investigators who come by every so often to examine it. Across the room are other items - boxes that read "hijacker keys," "hijacker bags," "hijacker computer hard drives." One table holds an envelope marked "hijacker toothbrushes."

The items are not so much evidence of lives lost or buildings collapsed as remnants of the crime itself - clues to basic questions such as who, and complex ones such as how.

"All the events that happened that day are reflected by what we have right here in this room," said Don Sachtleben, supervisory special agent of the FBI's Explosives Unit. "It all tells a story."

While hundreds of other agents track the plot's financing or the hijackers' al-Qaida associates, the Explosives Unit, a small and little-known FBI division, pores over evidence of how the crime was carried out. Its responsibility is the forensic investigation of the Sept. 11 attacks, and its task is to detect the mosaic through a haze of detail.

Within a day of the attacks and in the more than two years since, the unit has used the items in this room for leads into the investigation, as it has done for every suspected terrorist attack since 1993.

The Explosives Unit began the forensic examination Sept. 12. To some, the unit was an unlikely fit: It has just two dozen agents and staff, and its expertise was in investigating bombs. But the reality, amid the chaos of three crime scenes, four disintegrated jets and 2 million tons of rubble, was that the Explosives Unit was the only division with proficiency in managing a large-scale terrorist disaster.

A piece at a time

With the 1993 bombing of the World Trade Center, the Explosives Unit became the terrorist attack unit. And with each new disaster, it has refined its ability to manage the aftermath. Throughout all of them - the World Trade Center in 1993, Oklahoma City federal building in 1995, Saudi Arabia air base in 1996, Nairobi and Dar es

"The biggest problem we see at these big crime scenes is organization," Sachtleben said. "It's chaos. Everybody is running around, and you just sort of have to walk into that situation and break it down into adjustable chunks.

"You have to get everybody together and give them a mission," he said. "You give them something to think about so it takes their mind off of the enormity of the problem."

When they arrived at the AlMurrah Federal Building in Oklahoma City on April 19, 1995, unit members said they spent an hour staring at the half of the building that remained.

"You say, 'How are we ever going to do this?'" Sachtleben recalled. "Then you get going. You're not going to do it all in one day. You say, 'Today we are going to walk down this street and pick up everything that looks like a car part.'"

The parts in Oklahoma helped lead to Timothy J. McVeigh by identifying what turned out to be his rental truck.

The pieces the team collected on the ground in Africa, the type of explosives, the trucks used to drive up to the compounds, pointed to al-Qaida.

The boat parts in Yemen were examined for clues to the vessel's origin. The vehicle identification number from the first trade center bombing led to Ramzi Yousef, who was convicted of masterminding the attack.

It seems self-evident now: McVeigh blew up the federal building. Al-Qaida carried out attacks on the World Trade Center and on the USS Cole. Nineteen al-Qaida hijackers took over four commercial jets and killed nearly 3,000 people.

But, Sachtleben says, at the start, it never is so obvious. In the hours after the towers collapsed, officials could not say definitively that Osama bin Laden was the mastermind or that the hijackers were his followers.

There were, after all, other Middle Eastern men, others traveling alone, others sitting in business or first class who paid cash, on all four planes. They needed to know who was involved, Sachtleben said, and they could not be wrong.

So while the world was focused on New York and the Pentagon, Sachtleben and his team went where they knew almost all the intact evidence would be - in a crater in a Pennsylvania field. More than 90 percent of the key evidence that connected the hijackers to each other, to al-Qaida and to the plot came from Pennsylvania. It is collected here in the evidence bay and in another warehouse in a secret location in Virginia.

In the crater, where a 125-foot plane accordioned into 25 feet, they found a suicide note, an instruction letter disguised on children's stationery, multiple terrorist phone numbers, the hijackers' passports, cell phones, box

cutters and the cockpit voice recorder.

The Explosives Unit was created in 1972 to investigate bombs built by homegrown radicals of the late 1960s and the 1970s. At one of his desks, Sachtleben sometimes fiddles with the remnants of an unsolved pipe bomb from 1970.

In the 1980s, the unit was busy investigating bombings of abortion clinics and bombings by animal rights groups. Later, they were deep into the investigation of the Unabomber, Theodore J. Kaczynski. Then things started to change. "The big change has been the scope," Sachtleben said.

In previous decades, bombs in the United States were likely to target a single person, sent through mail or left on a desk. By contrast, Sachtleben said, bomb blasts today are seldom "personal." They are meant to inflict maximum death.

Pioneering case

The first known example of a vehicle-borne bomb dates back to 1919 in New York. A horse-drawn cart full of explosives pulled up in front of Wall Street and detonated, killing 40 people and the horse. No one was caught, but historians point the finger at anarchists.

The ensuing investigation was an early example of modern explosive forensics. New York police took the horse's shoe to every blacksmith shop until someone recognized it. Eventually, police determined where the horse came from, though the evidence never led to the culprit.

More than 80 years later, investigators use some of the same techniques, piecing together a vehicle or suicide notes. Most recently, they have assembled fragments from bombs targeting U.S. troops in Iraq.

"We look for the bomber's signature," Sachtleben said. "What items were used to build the bomb, and how does that relate to other bombs? How was the bomb constructed? Did they solder it? Did they tape it? Did they use wire?"

"We may never be able to say two things are absolutely identical," he said. "But what we can say is that two bombs were made by the same pair of hands or by two people working off the same sheet of instructions."

To delve into such detail, the unit has had to expand its expertise. Today, its members include chemists, physicists, aerospace engineers and experts in metals and DNA, and unit officials want funding to hire more. It has also begun working more with other agencies here and abroad, such as the CIA, the Pentagon and intelligence agencies from Europe.

When the group brought in a team of German investigators to share techniques, it was the Germans who alerted them to a type of stationery on which the hijackers wrote the instruction letter found at the crash site. Mohammed Atta and several of the hijackers spent significant time in Hamburg, Germany.

"It helps flesh out the story," Sachtleben said. "The 19 hijackers are dead; we're not so interested in them specifically anymore, but who funded them? Who got them there? Who trained them? It all tells a little bit more about how they were organized and how they communicated."

A few pieces of evidence from the attacks did not come from Pennsylvania: suitcases and a rental car document found in the hijackers' car at Dulles International Airport, a piece of a passport on the ground at the World Trade Center and Atta's suitcase, which failed to make his connection to Flight 11 and contained a suicide note, flight manuals and a Quran.

The unit made the initial link between Atta and the Pennsylvania hijackers by matching Atta's suicide note with one found at the crash site.

Setting emotion aside

There is one other piece of evidence of the events leading to the collapse of the towers that few outside the unit know of. Unit members found a disposable camera in the pocket of a man who jumped from one of the towers. When they developed the film months later, investigators found a chilling chronology of the man's experience that morning.

The photos show the man, who appears to be a construction worker, standing at the window as the other tower burns behind him. The photos, which include pictures he took as well as a few taken by someone else, also capture other jumpers falling. The man looks stricken, his face one of shock and disbelief. His family is aware of the photos, investigators said, but has not asked to see them.

The unit's investigators were initially confused by the film, because the last pictures on the roll show the man laughing among friends at a birthday party. They took the film to a photo expert in the unit who explained that disposable-camera film is developed in reverse.

Sachtleben and other unit members are painfully aware of the emotional link of just about every item they touch. It wears on them, even as they bury themselves in science.

"You have to look at it as a job," he said. "That doesn't mean I'm not affected by it. It just means you have to parse out some of those emotions until later."

His desk above the lab is covered with mementos from previous terrorist attacks - team patches, T-shirts, plaques, so many that the Smithsonian has asked him to donate them to the museum. He has an Oklahoma City arm patch, a coffee mug from the USS Cole, sand from Saudi Arabia.

"I used to be a big collector, but now not so much," he said quietly. "Now, there are so many. What's another rock, another piece of sand?"

This article is related to: Terrorism, FBI, Al-Qaeda, September 11 Attacks, The Pentagon, American Airlines

Copyright © 2020, The Baltimore Sun, a Baltimore Sun Media Group publication | Place an Ad

https://www.baltimoresun.com/news/bs-xpm-2003-12-21-0312210211-story.html

Missing comments? We've turned off comments across Baltimore Sun while we review our commenting platform and consider ways to improve the system. If you purchased points through the Solid Opinion platform and would like a refund, please let us know at circsupport@tronc.com.